GOETSCH, Appellant, vs. INTERNATIONAL HARVESTER COMPANY, Respondent

*February 17—March 9, 1909.*

*Master and servant: Personal injury: Instruction as to operation of machine: Contributory negligence: Direction of verdict.*

In an action for injuries to an employee who, while operating a boring machine, was struck by a rapidly revolving hand crank which he had permitted to remain upon the crank shaft when he applied the power, direction of a verdict for the defendant is *held* to have been proper, it being established beyond dispute by the evidence that plaintiff had been properly instructed and knew that the shaft revolved when the power was applied and that the danger from the revolving crank was obvious. KERWIN, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

This action was brought to recover damages for personal injuries received by plaintiff while in the employ of the defendant working at a boring machine. The negligence alleged was failure to instruct and incompetency of the instructor. The answer denied the material allegations of the complaint. After the evidence was in, the court directed a verdict for defendant and judgment was entered accordingly, from which this appeal was taken.

For the appellant there was a brief by *Ernst von Briesen* and *James A. Sheridan,* and oral argument by *Mr. Sheridan.*

For the respondent there was a brief by *Charles A. Vilas,* attorney, and *Robert N. McMynn,* of counsel, and oral argument by *Mr. McMynn.*

KERWIN, J. It is insisted by plaintiff that the defendant was negligent in failing to instruct the plaintiff and in fur-. nishing an incompetent instructor, and that the plaintiff did not know or appreciate the danger, and that these questions were questions for the jury; while on the part of the defendant it is insisted that the evidence showed as matter of law that there was no negligence on the part of the defendant, but that the plaintiff was guilty of negligence which proximately caused his injury.

It seems to be conceded that the description of the machine in question set out in the plaintiff's complaint is substantially correct. This machine consisted of a deep box bed of iron four feet wide, nine feet long, and about two feet six inches high, which box contained a shaft and bevel gear and supported a table upon which was placed the iron to be bored. On each end of the machine is an iron framework, one for the support of an adjustable spindle head which works the cutting bar, which spindle head is adjusted either by power or by hand, and on the left end of the box bed is a lever with a

spring clutch used in adjusting the spindle head. The lever bar or spring clutch is connected with the machinery in the interior of the box and is used in elevating or lowering the spindle head by power. This lever is shifted from the center hole to the one above when elevating the spindle head, and to the hole below when lowering it, the spring clutch dropping into either hole as required. On the left end and in front of the box bed and one and a half feet from the base line of said box is the end of a shaft which carries a hand crank about thirteen inches in length, which when on the shaft extends out about six inches. This shaft is connected with the machinery used for elevating and lowering the spindle head. The crank is used upon this shaft when slight adjustments of the cutting bar are made. The shaft is so adjusted to the machinery on the inside of the box that it is disconnected when the clutch is in the center hole and revolves very rapidly when it is in the upper or lower hole and the power applied. The plaintiff had been at work on this machine about two and one-half days. In doing the work of applying the power to elevate or lower the cutting bar it was necessary to stand in front of the crank shaft. Immediately above the crank shaft was a lever used to start the machine when elevating the cutting bar. At the time of the injury, plaintiff, in applying the power for the purpose of raising the cutting bar, was in such position that the crank, being upon the shaft when the power was applied, revolved with great rapidity and struck him, causing the injury complained of; so it appears that the injury was caused by permitting the crank to remain upon the shaft while plaintiff was adjusting the cutting bar. The operation of raising and lowering the cutting bar was for the purpose of removing the finished piece and placing another in the machine to be bored or milled. When plaintiff began his work defendant furnished one Janzen to instruct him, and Janzen spent several hours showing plaintiff how to operate the machine, and went through the process of putting in, fin-

ishing, and taking out at least two pieces of casting which involved the entire operation necessary. Janzen testified that he instructed plaintiff that the crank must be taken off and laid aside when not in use, and that he did so in giving him instructions. Plaintiff was thirty-five years of age, a boxmaker by trade, a man of at least average intelligence, had worked some on a farm, and also on a lathe for a street car company.

Respecting the incompetency of the instructor, Janzen, little need be said. While it is true he was not very familiar with the details of the machine, it is also clear from the evidence that he was perfectly familiar with its operation so far as such operation had any connection with the injury in question. The only complaint of failure to instruct is with reference to the removal of the crank or warning to the plaintiff that it was dangerous or would revolve rapidly when the power was applied to raise or lower the cutting bar. The position of the plaintiff when operating was directly in front of the crank shaft, and, while he denies he was instructed to take it off or was informed that it was dangerous to leave it on while the power was being applied, he admits that he did take it off every time he operated the machine before the time of injury, but claims he did so because it was in his way and not because he knew it was dangerous to leave it on. He testified that he finished ten or eleven jobs before the injury; that the crank stood out about six or eight inches; that he did not take it off the last time because he did not see it; that it must have hung down. It also appears from the evidence that when he was operating under the instruction of Janzen he took off the crank. The plaintiff testified:

"I watched Janzen as much as I could when he showed me how to work the machine, and did just as he showed me, and each time that I did a piece of work after the first two I did it in the way Janzen had shown me. I took off the crank each time because it was in the way—stood out. It was handier for the operator who worked at the machine to go around the machine. It stood out about six or eight inches. I noticed from the beginning that it was in the way. I took off

the crank every time until the last time. I did not take it off the last time because I did not see it. It must have hung down that I did not see it. The ten or eleven different jobs that I did were all bored alike. I don't know whether they were the same, but I bored them all alike, and they were put on just the same as the one Janzen first showed me."

He admitted that after the injury he said, "Why didn't I take off that crank?" There is also evidence that he stated after the injury that he got hurt because he forgot to take off the crank. He does not deny this, but says that he does not remember whether he made such statement or not. On the other hand, he denies that anybody ever told him to take off the crank, or that he ever saw Janzen or any one else take it off, or that he knew the crank shaft revolved when the power was applied.

It appears from the evidence that during the forenoon, or the greater part of it, while Janzen was instructing him, all the movements necessary in operating the machine were gone through with in the presence of the plaintiff, and at least two or three castings completed, after which plaintiff admitted he understood the operation of the machine. In view of the fact that the crank and shaft were in plain view and operated while plaintiff was receiving instructions, and his own testimony with reference to taking off the crank at all times prior to the time of injury, and his statement that in managing and operating the machine he strictly followed the instructions of Janzen, it is considered by the court that it is established beyond practical dispute that plaintiff was instructed as testified to by Janzen, and knew the crank shaft revolved when the power was applied but forgot to remove the crank. Upon the evidence, the principal material part of which has been heretofore referred to, the court is of the opinion that the court below was right in directing a verdict for defendant, and, especially in view of the deference due to the lower court upon the subject, its ruling in that regard should not be disturbed.

The main argument of counsel for appellant is that plaint-

iff was not warned of the particular danger, and that although it be admitted that he was instructed to take off the crank when applying the power to raise or lower the bar, still he ought to have been warned of the danger of not taking off the crank, namely, that the crank shaft would revolve with great rapidity when the power was applied to raise or lower the bar. If plaintiff knew, or in the exercise of ordinary care should have known, that the crank shaft would revolve rapidly when the power was applied, then it seems clear that he was apprised of the danger, because the danger of being struck by the rapidly revolving crank when he was in close proximity to it in operating the lever was perfectly apparent, and no further instruction in that regard was necessary.

In the foregoing opinion I have endeavored to state the views of the court. My individual opinion is that the case should have been sent to the jury on the questions of sufficiency of instructions, failure to warn, and contributory negligence of plaintiff.

*By the Court.*—The judgment of the court below is affirmed.